Carley v. Wilkins.

---

SAME TERM.     *Before the same Justices.*

## CARLEY vs. WILKINS.

An action can not be maintained by a purchaser of chattels, against the vendor, to recover damages for a defect in the quality of the goods, unless either a warranty, or fraud, is shown.

No particular phraseology is necessary to constitute a warranty on a sale of chattels. Any assertion of the vendor, concerning the articles sold, if it be relied on by the vendee, and understood by both parties as an absolute assertion, and not merely the expression of an opinion, will amount to a warranty.

A representation made by a vendor, upon a sale of flour in barrels, that it is in quality superfine, or extra superfine, and worth a shilling a barrel more than common, coupled with the assurance to the purchaser's agent, that he may rely upon such representation, is a warranty of the quality of the flour.

Upon a *warranty*, a vendor is accountable for any defect, whether he knew it or not. Upon a *representation* merely, it is incumbent on the plaintiff to aver that the defendant *knew* the representation to be false. For without such knowledge he is not liable for damages.

---

Carley *v*. Wilkins.

---

Selling an article as of a particular character is neither a warranty nor a representation. A different rule would abrogate the maxim of *caveat emptor*, which is the rule followed in this state.

The principle of that rule is that the purchaser has it in his power to guard against any *latent* defect or deception in the article purchased, by exacting a warranty, from the vendor. The principle assumes that both parties are equally innocent, and throws the loss upon the purchaser, for his negligence in omitting to exact a warranty.

A defendant, after having failed to demur to the complaint, or to object to the evidence, or to except to the decision of the referee in giving judgment for the plaintiff, will be held to have waived his right to object to the sufficiency of the complaint.

He can not raise the objection, upon the hearing of a case, brought in pursuance of the 223d section of the code of 1848, for the purpose of reviewing the decision of a referee upon the evidence appearing before him.

THIS action was commenced under the code of 1848. The complaint stated that the plaintiff, by his agent, on the 16th of June, 1847, purchased and received of the defendant 218 barrels of flour in closed barrels, *which the defendant sold and delivered to the plaintiff as superfine flour, Michigan mills*, at $7,50 per barrel, which price was paid therefor by the plaintiff. That instead of such flour being superfine flour, the most of it proved, on subsequent examination, to be of an inferior quality to superfine flour, in consequence of which inferiority the plaintiff sustained damages of at least $327, with interest from the 16th of June, 1847, which he claimed as damages, &c. The complaint was verified on the 24th of July, 1848.

The answer stated that at the time of the sale of the flour mentioned in the complaint, the defendant executed and delivered to the plaintiff's agent an instrument in writing annexed to the bill of sale of the flour, as follows :

"Inspection superfine, guarantied in Albany or Schenectady ; the flour to be inspected within twenty days—to be carried under deck on canal, and inspection bill returned immediately. June 16, 1847.       R. P. WILKINS."

That the plaintiff had never caused the said flour to be inspected, nor any inspection bill to be returned to the defendant. That the said flour was, at the sale and delivery thereof to the

Carley *v.* Wilkins.

plaintiff, good merchantable superfine flour. That the defendant sold the said flour as the factor or agent of A. B. Mathews, of Pontiac in the state of Michigan, which fact the plaintiff's agent, at the time of the sale, well knew. That the defendant did not, at any time, either before or after the sale, make any statement or representation as to the quality of the said flour, and that the plaintiff's agent saw said flour before the purchase thereof. And the defendant insisted that by the terms of the said instrument in writing, the plaintiff was bound to cause the said flour to be inspected within twenty days from the 16th of June, 1847, and to send the inspection bill to the defendant. The answer was verified August 15, 1848.

The reply stated 1. That the instrument in writing alledged in the answer to have been executed and delivered to the said Alexander Miller [the plaintiff's agent] was a memorandum written at the foot of the bill and receipt made out by the defendant, of the quality, description and price, and payment for said flour, and signed by the defendant only. 2. That there was no legal inspector of flour in Schenectady or Albany at the time of the sale of said flour to the plaintiff by the defendant, nor ever since. 3. That the said flour was not, at the time of the sale and delivery thereof, good merchantable superfine flour. 4. That the defendant sold said flour in his own name, and on his own responsibility, and took the draft for pay in his own name, without any reference to his being factor or agent, as stated in his answer. 5. That the defendant did, at or during the negotiation for the sale of said flour, as the plaintiff is informed and believes, state and represent that said flour was in quality extra superfine flour worth a shilling a barrel more than common, and that said Miller did not examine said flour to ascertain its quality, but took it upon the representation and assurance of the said defendant as to quality. 6. The plaintiff insisted that he was entitled to maintain this action without having caused the said flour to be inspected within twenty days from the 16th day of June, 1847, and without sending an inspection bill to the defendant.

The reply was verified on the 2d of September, 1848. The

cause was heard before a sole referee, and he, on the 3d of March, 1849, made a report in favor of the plaintiff for $299,16, on which, with $85,70 costs, judgment was entered.

The report of the referee found 1. That on the 16th day of June, 1847, the defendant sold and delivered to the plaintiff 218 barrels of flour for superfine flour, " Michigan mills."   2. Said flour was bought and sold in closed barrels, and the plaintiff paid the defendant $7,50 per barrel.   3. That the plaintiff's agent did not see or examine the flour at or before the time of sale, but took it upon the defendant's representation that it was in quality superfine, *or extra superfine, and worth a shilling a barrel more than common*.   4. That the defendant sold the said flour in his own name, and not as the factor or agent of A. B. Mathews.   5. That the plaintiff never caused an inspection bill of said flour to be returned to the defendant, but had some of it inspected.   6. That the contract of sale of the flour in question was not in writing, but was by parol, and that the instrument or memorandum in writing at the bottom of the bill of parcels and receipts was not the contract of sale of said flour, nor any part thereof.   7. That at the time of said sale, only two-tenths of said flour was superfine, one-tenth was fine, five-tenths was middlings, and two tenths was bad, being sour flour. 8. That at the time of the sale the difference in value between superfine flour and middlings was two dollars and thirty-seven and a half cents ber barrel, and the difference in value between superfine and fine flour was thirty-seven and a half cents per barrel.   And the referee reported the conclusions of law as follows : 1st. That the plaintiff was not entitled to recover any thing for the bad flour, under the complaint : and 2d. That the plaintiff was entitled to recover against the defendant the sum of $267,12, with interest from 16th of June, 1847, to the date of the report.   And he therefore reported in favor of the plaintiff $299,16, besides costs.   The referee also returned the testimony at large, the whole of which appeared to have been taken without objection.   At the close of the testimony, it is stated that the counsel for the defendant, among other things, insisted that the plaintiff was not entitled to recover, 1st. Because the

complaint did not state facts sufficient to constitute a cause of action. 2d. Because it was alledged in the answer that the contract of sale of the flour in question was in writing, and was subject to a condition that the flour was to be inspected within twenty days, to be carried under deck on the canal, and the inspection bill returned immediately; and that the plaintiff had not caused the flour, nor any part thereof, to be inspected, nor an inspection bill to be returned to the defendant. That the reply did not specifically controvert these allegations, and they were therefore admitted; and that no evidence could be given of any other contract. It did not appear what the referee did with these objections, other than that he reported in favor of the plaintiff, as before stated.

A motion was now made to set aside the report upon a *case.*

*J. C. Wright,* for the defendant.

*S. W. Jones,* for the plaintiff.

*By the Court,* WILLARD, J. The referee has found that the flour in question was purchased by the plaintiff, without having been examined or seen by him; that it was purchased for superfine flour, Michigan mills, upon the representation of the defendant that it was in quality superfine, or extra superfine, and worth a shilling a barrel more than common. The testimony fully warrants the referee in so finding; and it was received without objection. The representation made by the defendant to Miller, the plaintiff's agent, was a warranty of the quality of the flour, within the decision in *Chapman* v. *March,* (19 *John.* 290.) The representation was express and direct, and the plaintiff's agent was assured that he might rely upon it.

This case is distinguishable from *Seixas* v *Woods,* (2 *Caines'* *Rep.* 48,) and *Sweet* v. *Colgate,* (20 *John.* 196.) In those cases the purchaser saw and examined the articles, and had as good means of knowing their qualities as the vendor. Both parties were equally ignorant of the defects. There being neither fraud nor warranty, the maxim *caveat emptor* was held applicable,

and the purchaser was left to sustain the loss. Such, we understand to be the general rule, in this state, at the present day. Either a warranty or fraud must be shown, or the action can not be maintained. ⁺ No particular phraseology is necessary to constitute a warranty. Any assertion of the vendor, concerning the articles sold, if it be relied on by the vendee, and understood by both parties as an absolute assertion, and not merely the expression of an opinion, will amount to a warranty. (*Chapman* v. *March*, 19 *John.* 290. *Roberts* v. *Morgan*, 2 *Cowen*, 438. *The Oneida Man. Society* v. *Lawrence*, 4 *Id.* 440. *Kinley* v. *Fitzpatrick*, 4 *How. Miss. Rep.* 59. *Morrill* v. *Wallace*, 9 *N. Hamp. Rep.* 111. *McGregor* v. *Penn*, 9 *Yerger*, 74.)

As the conclusion which the referee has drawn according to section 222 and 227 of the code of 1848, is a just deduction from the facts found, and as those facts were proved without objection, there does not appear to be any ground to disturb the report, upon a *case*. The 227th section of the code contemplates that the decision of a referee may be reviewed in the same manner as the decision of the court when trying a question of fact without a jury. (§ 222.) This mode of review is prescribed by section 223. It allows a decision on a matter of law, arising upon such trial, to be the subject of an *exception*, in the same manner and with the same effect, as upon a trial by jury. And it provides for a review upon the *evidence* appearing on the trial, either of the questions of fact or of law, upon a *case* containing so much of the evidence as may be material to the question to be raised. The latter mode is the one adopted on the present occasion.

It has already been intimated that there is no ground to disturb the report, as being against evidence. And it has also been seen that no question of law arose as to the admissibility of the evidence under the pleadings. At the close of the testimony it was insisted by the defendant's counsel, before the referee, that the plaintiff was not entitled to recover, for the reason, among others, that the complainant did not state facts sufficient to constitute a cause of action. That question has been repeated in

this court, and forms the prominent ground for the motion to set aside the report.

This gives rise to two questions; *first,* as to the sufficiency of the complaint; and *second,* as to the time and manner of taking advantage of the insufficiency, if it be insufficient.

I. The complaint does not state a cause of action in *fraud,* because it fails to aver that the defendant *knew* that the flour was of a different quality from that which he professed to sell. Upon a *warranty* a party is bound to accountability for any defect, whether he knew it or not; upon a *representation* merely, it is incumbent on the plaintiff to aver that the defendant *knew* the representation to be false; otherwise he is not liable for damages. (*Per Savage, Ch. J. in Case* v. *Boughton,* 11 *Wend.* 108.)

II. The complaint does not state a cause of action upon a *warranty.* It sets out no warranty either in terms, or by equivalent words. It does not alledge that the defendant represented the flour to be of a particular quality, or that the plaintiff confided in any assurances of the defendant with respect to its quality. It has already been shown what representations amount to a warranty; and in short, that the representations proved before the referee in this action, were of that character. Nevertheless, the complaint does not contain any form of words which can be tortured into a warranty. It has been repeatedly decided that selling an article as of a particular character, is neither a warranty nor a representation. (*Seixas* v. *Woods,* 2 *Caines,* 48. *Sweet* v. *Colgate,* 20 *John.* 196.) A different rule would abrogate the maxim of *caveat emptor,* which is the rule followed in this state. The principle of the rule is that the vendor has it in his power to guard against any *latent* defect or deception in the article purchased, by exacting a warranty from the vendor; but if instead of taking this precaution, he will trust to his own sagacity and judgment, he should bear the loss. The principle assumes that both parties are equally innocent, and it throws the loss upon him who omits to exact that which would have afforded him ample protection, the exacting of which would have apprized the opposite party of the necessity of tak-

Carley *v.* Wilkins.

ing measures for his own indemnity. ( *Welsh* v. *Carter*, 1 *Wend.* 185, 190.)

III. The complaint thus being radically bad in substance, it remains to inquire at what time and in what manner the defendant can take advantage of the defect. The code of 1848, under which this pleading was drawn, (§ 122,) allows a defendant to demur, for six causes therein stated, the last of which is, that the complaint does not state facts sufficient to constitute a cause of action. Subsequent sections require the demurrer to point out distinctly the objections to the pleading, and allow the plaintiff to amend of course and without costs. Even after a decision of the court upon the demurrer, leave may be granted to the plaintiff to amend, or to the defendant to withdraw the demurrer. By section 127 it is provided that if the objection to the *complaint*, appearing on the face of the pleading, be not taken by demurrer, the defendant shall be deemed to have waived it, excepting only the objection to the jurisdiction of the court over the subject of the action ; and the objection that the complaint does not state facts sufficient to constitute a cause of action. By omitting to demur the defendant deprived the plaintiff of the right of amendment of course, and without costs, but did not waive the objection in question. But the code is silent as to the time and manner in which the defendant, after failing to demur to the complaint, can be permitted to insist that it contains no cause of action. In determining this question we must be governed by the analogy of the former practice. (1.) The defendant might have objected to the plaintiff's proving any material fact not contained in the pleading. This would have enabled the court or referee to dispose of the question at once ; or if need be, have permitted the plaintiff to apply for leave to amend. But the defendant raised no objection to the proof when it was offered ; and thus, a good cause of action was proved, under a complaint containing none. The defendant could not have moved for a nonsuit on the ground of the insufficiency of the complaint. (*Kelly* v. *Kelly*, 3 *Barb. Sup. Court Rep.* 419.) (2.) Under the former practice a motion in arrest of judgment might have been made, within the first four days

of the term next after the trial. (*Rule* 76.) If this practice exists under the code, it is presumed the motion must be made within the first four days after the verdict is received; (§ 220 ;) or within ten days after notice of the decision of the referee. (§ 223.) The motion must be made before judgment is entered. But in the present case, the defendant has suffered judgment to be entered, and he is thus precluded from moving in arrest, if that practice has not been abrogated by the code. (3.) The only remaining way of making the objection to the sufficiency of the complaint available, is by appeal. This, by section 297, can be taken from a judgment entered upon the direction of a single judge of the same court; and it is presumed from a judgment rendered on the report of a referee. (§§ 222, 223, 227, 233.) It can only be taken after judgment, and it must be made by the service of a notice in writing specifying from what part of the judgment the appeal is taken. (§275.) The clerk must, by section 276, forthwith transmit to the appellate court a certified copy of the notice of appeal and of the judgment roll: which roll it is provided by sec. 236, sub. 2, shall contain "the summons, pleadings, and a copy of the judgment, with any verdict or report, the offer of the defendant, case, exceptions, and all orders relating to a change of parties, or in any way involving the merits, and necessarily affecting the judgment. On such appeal, promoted by the defendant, the sufficiency of the complaint is put in issue, if it be made the ground of appeal. (§§ 275, 278.) It is conceived that the objection to the sufficiency of the complaint is waived, even on appeal, if the judgment appealed from is sought, in the notice of appeal, to be reversed or modified for reasons other than the defects in the complaint. Be that as it may, the defendant has not appealed in this case. He took no exception to the decision of the referee, as he might have done by § 223. He merely seeks to review the decision of the referee upon the evidence appearing before him, upon a case, in pursuance of the last clause of the said section 223. The motion is analogous to an application for a new trial upon a case, on the ground that the verdict of a jury was against evidence. Such motions are never granted unless the verdict is

clearly against the weight of evidence. And in analogy to that practice we never disturb the report of a referee, when no principle of law has been violated, merely upon the ground that it is against evidence. (*Esterly* v. *Cole*, 1 *Barb. S. C. Rep.* 235.)

We think the question as to the sufficiency of the complaint is not properly before us at this time. The defendant having failed to demur, or object to the evidence, or to except to the decision of the referee in giving judgment for the plaintiff, has waived his right to impeach the complaint.

Motion to set aside report of referee denied.

Albany General Term, July, 1849. *Wright, Harris, and Watson,* Justices.